IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILBERT ROGERS, JR.,

        Plaintiff,                      No. CIV S-06-2556 GEB EFB P

    vs.

D. K. SISTO, et al.,

        Defendants.            ORDER AND
                                     FINDINGS AND RECOMMENDATIONS

_____/

      Plaintiff is a prisoner without counsel suing for alleged civil rights violations. *See* 42 U.S.C. § 1983. This action proceeds on the November 11, 2006, complaint in which plaintiff claims that defendant A. A. Boholst used excessive force against plaintiff in violation of the Eighth Amendment and filed a false disciplinary report against him in violation of the Fourteenth Amendment. Currently pending before the court are defendant's motion for summary judgment and plaintiff's motion to continue summary judgment. Plaintiff has not filed any opposition to the motion for summary judgment. For the reasons explained below, the court finds that plaintiff's motion must be denied and defendant's motion must be granted.

**I.    Facts**

      At all times relevant to this action, the plaintiff was a prisoner in the California Department of Corrections and Rehabilitation confined at California State Prison, Solano. *See*

1

Compl., at 1, 2.  Defendant Boholst was a medical technical assistant ("MTA") there.  *Id.*, at 2. As an MTA, Boholst was responsible for distributing medications to prisoners and for monitoring prisoners' access to the medical facility.  Def.'s Stmt. of Undisp. Facts in Supp. of Mot. for Summ. J. ("SUF"), 2; Boholst Decl., ¶ 2.  He has no authority to conduct disciplinary hearings or any influence over disciplinary proceedings.  *Id.*, at ¶ 3.  Neither does he have any authority over the location of prisoners' housing or transfer to a different facility.  *Id.*

     On March 3, 2006, a number of prisoners sought access to the medical clinic through a breezeway from the yard.  Boholst Decl., ¶ 4.  Plaintiff was one such prisoner.  SUF 1.  At his deposition, he testified that there was a long line, and prisoners were "kind of rushing through the gate.  Everybody is trying to get their medication and go to work."  Boholst Decl., Ex. C, Deposition of Plaintiff ("Pl.'s Dep."), at 26.  Plaintiff testified that when he stepped up to the gate, "Boholst slam[med] his hand into my chest, said, 'Hold it right there.'"  *Id*., at 26:14-16. He claimed that Boholst used the heel part of his palm in stopping plaintiff with force hard enough to push plaintiff, who weighed 200 pounds, backwards a couple of feet.  *Id.,* at 27:14, 20-22, 25. Plaintiff further testified that when he asked Boholst why he slammed him in the chest, Bolhost responded that he would put his hands on plaintiff any time he wanted, and then demanded plaintiff's identification.  *Id.*, at 26:20-25.  Plaintiff said that he put his hands in the air over his head with his identification between his index fingers while Boholst was "ranting and raving," and that Boholst then hit plaintiff in the chest area with his right hand.  *Id.*, at 30:9-15, 24.  Plaintiff clarified that "it was more of a push hit," than the first contact.  *Id.*, at 20.  He began to walk away from Boholst with his hands still in the air above his head holding his identification, when, he claims, Boholst grabbed plaintiff from the back on the left shoulder and under his arm.  *Id.*, at 32, 11-16, 21.  Boholst allegedly swung plaintiff around, and plaintiff backed off to avoid being hit again.  *Id.*, at 33:1-6, 15-17.  Then, plaintiff claims, Boholst blew his whistle, and plaintiff continued walking away from Boholst but towards an area where other officers were located.  *Id.*, at 33:21-23.  Plaintiff's hands still were in the air.  *Id.*, at 23-24.

Boholst sounded a security alarm. *Id.*, at 33:24-25. Plaintiff testified that the confrontation startled him because Boholst is significantly shorter and smaller than plaintiff. *Id.*, at 30:1-7.

Boholst gives a different version of the events. He asserts in his declaration that he told plaintiff that it was too crowded for plaintiff to gain access to the medical clinic at that time, and plaintiff became "belligerent and disrespectful." SUF 3. According to Boholst, he directed plaintiff to hand over his identification card so that Boholst could document plaintiff's behavior, but plaintiff disobeyed the order. SUF 4. Boholst allegedly repeated the order, but plaintiff still disobeyed. SUF 6. Boholst says he ordered plaintiff to leave the gate area, but again, plaintiff disobeyed the order. SUF 5. Ultimately, plaintiff did leave the gate area, and Boholst alleges that he followed plaintiff in order to identify him so that he could write a disciplinary report for disrespecting an officer. SUF 7, 8. Plaintiff was in front of the dining facility when Boholst caught up with him. SUF 9. Boholst ordered plaintiff to hand over his identification card. SUF 9. In response, plaintiff allegedly walked quickly towards Boholst until he was about one inch away from Boholst and "made contact" with Boholst's outstretched hand with his own hand. SUF 10. Boholst, feeling threatened, blew his whistle three times to signal that he felt an imminent threat to his safety and to the security of the institution. SUF 11. Several guards responded, following which plaintiff underwent a medical evaluation. SUF 12-13. A different MTA examined plaintiff and determined that he was not injured. SUF 14, 15. Plaintiff was placed in administrative segregation.

On March 3, 2006, Boholst completed a form 128-B, "General Chrono," describing plaintiff's behavior that day. SUF 17, 20. This form is not a disciplinary report. SUF 18. It is a form for keeping a chronological written record of significant events during and information relevant to a prisoner's confinement, and is maintained in a prisoner's central file. SUF 18, 19. In it, Boholst described the events at the gate, and stated the following about what happened near the dining hall:

////

> When confronted to surrender his ID, he proceeded to come at me until he was an inch away hitting my outstretched hand with his hand. At this point I felt that he intended to harm me and was just looking for an excuse to start hitting me. The threat was reinforced when he said in a very aggressive, confrontational and threatening manner, "Hit me Hit me." [sic] several times trying to provoke me. I immediately blew my whistle three times to alert staff of a probable imminent threat to my safety and the security of the institution. It was then that several officers responded to the alarm.

Boholst Decl., Ex. A. Also in that 128-B form, Boholst stated that he would fear for his safety if plaintiff were released from administrative segregation. SUF 21. He requested that plaintiff be transferred to a different prison. SUF 22.

On March 27, 2006,[1] Boholst received a letter from plaintiff. SUF 23. In its entirety, the letter states:

> Mr. Boholst, I'm Currently [sic] in ad-seg as a result of the incident of 3-3-06. I'm O.K. with my punishment and I sincerely want you to be O.K. with that also. I don't wish to persue [sic] this situation any further by filing any type of complaint or action against you, but I do wish to talk with you and this is my <u>request for an interview.</u>
>
> Sometimes things go wrong when your in a bad situation, I live in on . . ., and you work in on. I want you to know that I'm not taking any of this personally and I do apologize for any stress or discomfort I may have caused you. Man to man I would like to speak with you, please grant my interview. [sic].

(Emphasis in original). Boholst Decl., Ex. B. Defendant took this letter as a threat; and, therefore, he did not respond in any way. SUF 24.

In disciplinary proceedings stemming from these events, plaintiff was charged with battery on a peace officer, but was found guilty of refusing a direct order. SUF 16; Pl.'s Dep., at 43:1-11. The punishment was the time he already had served in administrative segregation. *Id.*, 43:17-18. Thus, he did not lose any time credits. *Id.* Defendant Boholst took no part in the disciplinary hearing, did not handle any of plaintiff's administrative appeals, and was not

---

[1] In his statement of undisputed material facts and in his declaration, Boholst states that he received the letter on March 27, 2007. However, Boholst attaches the letter as Exhibit B to his declaration, and the letter is dated March 27, 2006. It thus appears that the year 2007 is a typographical error. The court will refer to the date reflected on the letter.

4

involved in any decisions about plaintiff's custody status, housing or transfer to a different prison.  SUF 27, 28.

## II.    Plaintiff's Request to Continue Summary Judgment

Plaintiff seeks additional time for discovery.  He asserts that if he had the documents he identifies in his request for the production of documents, which is the subject of his October 29, 2007, motion to compel[2], he could establish a genuine issue for trial.  Defendant opposes the request, arguing that plaintiff has failed to identify specific facts and explain why discovery thereof is essential to oppose defendant's motion.[3]  As explained, the court agrees with the defendant.

A court may deny a motion for summary judgment or continue proceedings thereon to permit discovery when an opposing party shows by affidavit that it cannot present facts essential to justify the party's opposition.  Fed. R. Civ. P. 56(f).  As the party opposing summary judgment, plaintiff's burden to prevail on this motion is high:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).  This standard requires the party seeking a continuance to "identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City and County of San Fransisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).  In support of his request, plaintiff submits a declaration asserting that defendant has not responded to his discovery requests, he lacks access to his legal materials,

---

[2]  Plaintiff filed a motion to compel, which the court has resolved by separate order.

[3]  In support of his opposition, defendant requests that the court take judicial notice of other filings in this case.  The request is unnecessary.  Judicial notice is a mechanism for supplying facts required to be proved in a proceeding.  In summary judgment proceedings, the court may consider the contents of the record in the case under consideration without the need for judicial notice.

and he requires the assistance of counsel to proceed with this action. He also attaches a copy of a request for the production of documents he served on defendants, asserting he needs the documents requested therein. However, this is insufficient to obtain a continuance of these proceedings. Neither the declaration nor the attached discovery request identify particular facts upon which he would rely to oppose defendant's motion for summary judgment. Plaintiff does not explain why any specific fact or facts would help him to withstand defendant's motion. Thus, plaintiff's Rule 56(f) request must be denied.

Significantly, plaintiff has not filed an opposition to the motion for summary judgment or a motion for an extension of time to respond to defendant's motion for summary judgment. No rule provides for the tolling of time to respond to a motion for summary judgment based on a request made pursuant to Rule 56(f). As noted elsewhere in these findings and recommendations, the court informed plaintiff of the requirements for opposing a motion for summary judgment. Thus, the court considers defendant's motion in the absence of any response from the plaintiff.

**III.     Failure to State a Claim**

Defendant Boholst construes the complaint as claiming that he violated plaintiff's right to due process in the disciplinary hearing, that he retaliated against plaintiff and that he conspired to violate plaintiff's rights. Defendant seeks summary adjudication of these claims. Def.'s Mot. for Summ. J., at 8:23-25. The court did not read the complaint to make any such claims. However, for the sake of clarity and completeness of analysis, the court addresses these issues.

**A.  Due Process**

Plaintiff claims that defendant falsely charged plaintiff with battery on a peace officer, thereby triggering disciplinary proceedings. Defendant Boholst contends that he is not subject to liability because he did not participate in or influence the ensuing disciplinary hearing. Insofar as plaintiff attempts to make a due process claim, however, defendant misconstrues it. Plaintiff does not allege that Boholst did anything during the proceedings; rather, he challenges the fact

6

1  that Boholst submitted a disciplinary report against which plaintiff had to defend.  The alleged
2  violation of his rights was in the fact that Boholst filed a report containing allegations he knew to
3  be false.  Plaintiff, however, does not allege facts sufficient to state a claim.  To state a claim for
4  the deprivation of procedural due process, plaintiff must allege an identified state actor denied
5  him a specific liberty interest, which may arise independently under the due process clause or as
6  freedom from state deprivation or restraint imposing "atypical and significant hardship on the
7  inmate in relation to the ordinary incidents of prison life," without procedures adequate to
8  protect the interest.  *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995).  A prisoner has no interest
9  in freedom from false disciplinary accusations.  *Hines v. Gomez*, 108 F.3d 265, 268-69 (9th Cir.
10 1997).  They are, however, entitled to certain procedural protections at prison disciplinary
11 hearings.  *See Wolff v. McDonnell*, 418 U.S. 539, 563-566 (1974) (outlining required and
12 discretionary procedural protections).  Here, petitioner does not challenge the procedures used in
13 the disciplinary hearing.  Furthermore, it is undisputed that he was found not guilty of the charge
14 that he alleges was false.  Thus, he suffered no injury; rather, he actually benefitted from the
15 disciplinary process.  While he was placed in administrative segregation following the incident,
16 it is not clear whether this was because of the disciplinary report or because plaintiff was
17 perceived as a security threat following the incident between himself and Boholst.  Placement in
18 administrative segregation, without more, is not an "atypical and significant hardship in relation
19 to the ordinary incidents of prison life."  *See Sandin*, 515 U.S. at 485- 487 (prisoner's placement
20 in disciplinary segregation was not such an atypical and significant deprivation so as to entitle
21 prisoner to the protections outlined in *Wolff*).  Furthermore, even though plaintiff alleges that the
22 report itself remains in his central file, he does not allege that the disciplinary report in any way
23 will affect the duration of his prison sentence.  Thus, plaintiff's allegation that filing a false
24 disciplinary report violated his right to due process fails to state a claim.  It therefore must be
25 dismissed.
26 ////

**B. Retaliation**

The court has reviewed the complaint in detail and finds that plaintiff nowhere articulates a claim for retaliation against Boholst. To state a claim for retaliation, plaintiff must allege that on a specified date an individual state actor took adverse action against plaintiff for his engagement in a constitutionally protected activity and the adverse action chilled plaintiff's exercise of his rights and did not reasonably advance a legitimate penological goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Rizzo v. Dawson*, 778 F.2d 527, 531-32 (9th Cir. 1985). In the complaint, plaintiff alleges that,

> defendant A. BOHOLST physically assaulted plaintiff and thereafter filed false disciplinary charges against plaintiff reporting "BATTERY ON A PEACE OFFICER," omitting his use of force and violence against plaintiff from his reports.

Compl., at 3. He does not mention retaliation until the final sentence, in which he alleges, "Plaintiff also complains herein about unlawful retaliation and conspiracy to do plaintiff harm constituting cruel and unusual punishment." *Id*. There simply is no connection between plaintiff's mention of retaliation and any allegation related to defendant Boholst. Furthermore, the court notes that in its December 6, 2006, screening order, the court set out the elements of a retaliation claim and gave plaintiff an opportunity to file an amended complaint. Plaintiff elected to proceed on the initial complaint. Thus, insofar as plaintiff intended to state a claim of retaliation against defendant Boholst, he fails to do so. Any such claim must be dismissed.

**C. Conspiracy**

For like reasons, the court did not find that plaintiff stated a claim for conspiracy. As noted above, plaintiff alleges conspiracy. To state a claim for conspiracy, plaintiff must allege specific facts showing two or more persons intended to accomplish an unlawful objective of causing plaintiff harm and took some concerted action in furtherance thereof. *Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621, 626 (9th Cir. 1988); *Gilbrook v. City of Westminster*, 177 F.3d 839 (9th Cir. 1999); *Burns v. County of King*, 883 F.2d 819, 822 (9th Cir.

1989) (conclusory allegations of conspiracy insufficient to state a valid § 1983 claim); *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989)(plaintiff failed to allege specific facts showing agreement and concerted action among defendants); *see also*, *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998)(to state claim for conspiracy under § 1983, plaintiff must allege facts showing an agreement among the alleged conspirators to deprive him of his rights); *see also*, *Delew v. Wagner*, 143 F.3d 1219, 1223 (9th Cir. 1998) (to state claim for conspiracy under § 1983, plaintiff must allege at least facts from which such an agreement to deprive him of rights may be inferred).  Plaintiff alleges no facts suggesting that any defendants agreed ahead of time to violate his rights and then took some action in furtherance thereof.  Again, in the screening order, the court explained the elements of such a claim.   It is unclear why Boholst even addresses conspiracy in his motion.  However, insofar as plaintiff intended to state a claim of conspiracy against Boholst, he failed to do so.  Any such claim must be dismissed.

**IV.    Standards on Summary Judgment**

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[4]  The utility of Rule 56 to determine whether there is a "genuine issue of material fact," such that the case must be resolved through presentation of testimony and evidence at trial is well established:

> [T]he Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the nonmoving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Second, to withstand a motion for summary judgment,

---

[4] On January 18, 2007, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

9

> the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added). In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322). There can be no genuine issue as to any material fact where there is a complete failure of proof as to an essential element of the nonmoving party's case because all other facts are thereby rendered immaterial. *Celotex,* 477 U.S. at 323.

With these standards in mind, it is important to note that plaintiff bears the burden of proof at trial over the issue raised on this motion, i.e., whether defendants used excessive force. Therefore, to withstand defendant's motion, plaintiff may not rest on the mere allegations or denials of his pleadings. He must demonstrate a genuine issue for trial, *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989), and he must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.

**V.     Analysis**

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. Here, plaintiff's action arises

10

under 42 U.S.C. § 1983 and the Eighth Amendment. To prevail at trial, he must prove that the defendant deprived him of his Eighth Amendment rights while acting under color of state law. To prove that defendant Boholst used force that violated the Eighth Amendment, he must prove by a preponderance of the evidence that Boholst used force maliciously and sadistically solely for the purpose of causing plaintiff physical harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). As discussed below, plaintiff has not demonstrated a genuine dispute about whether defendant used excessive force.

### A. Excessive Force

As noted, plaintiff claims that defendant Boholst used excessive force by pushing plaintiff in the chest twice and spinning him around. Defendant Boholst asserts that plaintiff cannot submit sufficient evidence of excessive force to withstand the motion. The law is clear that harsh conditions of confinement, including the use of force, will not violate the Eighth Amendment if the conditions are "part of the penalty that criminal offenders pay for their offenses against society." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Not every "malevolent touch by a prison guard" violates the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "*de minimis* uses of physical force" are not unconstitutional unless it of a sort that is "repugnant to the conscience of mankind." *Whitley*, 475 U.S. at 327. What violates the Eighth Amendment is "the unnecessary and wanton infliction of pain," i.e., infliction of suffering that is "totally without penological justification." *Rhodes*, 452 U.S. at 346. Whether an Eighth Amendment violation has occurred depends upon the mental state of the defendant together with objective indicia surrounding the condition or suffering showing its relationship to the purpose of imprisonment. *Id.* The touchstone for any Eighth Amendment analysis, however, is whether the condition can be said to run afoul of "contemporary standards of decency." *Rhodes*, 452 U.S. at 347. When force is used against a prisoner, the question of "whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to

maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 at 320-21; *see also Hudson*, 503 U.S. at 9. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated," regardless of whether the resulting injury is significant. *Hudson*, at 9. In other words, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate *does not suffer serious injury*." *Hudson*, 503 U.S. at 4 (emphasis added). "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* Therefore, the extent of injury suffered is just "one factor that may suggest whether the use of force could plausibly have been thought necessary in a given situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.*, at 7. When determining whether the force used was excessive, the court must consider (1) the need to use force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by prison officials, (4) any effort made to temper the forceful response, and (5) the extent of the injury suffered by the inmate. *Id*. With this background and these standards in mind, the court turns to the facts of this case.

Here, the parties do not dispute that Boholst pushed plaintiff. According to plaintiff's deposition testimony he did so twice, the second time hard enough to push plaintiff backwards. Boholst also swung plaintiff around by the shoulder. It is undisputed that Boholst first pushed plaintiff when he was in a crowd of prisoners pushing through a gate to get to the medical clinic. It also is undisputed that plaintiff disobeyed an order to leave the area. Plaintiff does not submit any evidence denying that he disobeyed Boholst's order to leave the gate area and to hand over his identification. Neither does plaintiff submit any evidence to contest Boholst's evidence that in response to the order to leave the area, plaintiff became "belligerent and disrespectful." Thus, it is reasonable to infer that Boholst pushed plaintiff in order to enforce a direct order that plaintiff had disobeyed. This evidence sufficiently demonstrates a need for minimal force, and

the evidence shows that at this point, Boholst did no more than block plaintiff's entry through the gate.  The block may have caused plaintiff discomfort or seemed harsh.  Even assuming Boholst told plaintiff that he would touch him whenever he wanted, this language coupled with the push do not demonstrate a wanton or gratuitous intent to inflict harm in this instance.  Furthermore, the undisputed evidence shows that Boholst reasonably perceived a security threat, i.e., many prisoners pushing and rushing to gain access to a single part of the prison.  The court finds that plaintiff has failed to adduce evidence that the force Boholst used was excessive compared to the need for it.  Thus, defendant Boholst is entitled to judgment as a matter of law on this portion of plaintiff's excessive force claim.

The court arrives at the same conclusion with respect to the allegation that Boholst pushed plaintiff a second time, with such force to knock plaintiff backwards a few feet, and then spun him around.  Defendant submits evidence that he pursued plaintiff through the prison and ordered plaintiff to hand over his identification.  Plaintiff does not deny these facts.  Instead, testified at deposition that after the first push from Boholst, he put his hands in the air above his head, and held his identification card there.  He also testified that Boholst was "ranting and raving," when he hit plaintiff in the chest area with his right hand.  At this point, plaintiff asserts, he began to walk away from Boholst, still holding his identification above his head, when Boholst grabbed plaintiff on the left shoulder and under his arm and swung plaintiff around to face him.  Bolhost asserts that he and plaintiff were near the dining facility.  It is not clear from plaintiff's version whether he concedes this fact.  However, the undisputed facts remain that Boholst ordered plaintiff to turn over his identification, and plaintiff did not do so.  Instead, he continued to hold it up over his head.  It appears from plaintiff's deposition testimony that Boholst is of smaller stature than plaintiff.  Boholst could not reach the identification where plaintiff held it and, if he tried, it could have led to a dangerous physical altercation.  Thus, plaintiff's act of holding the identification over his head constituted resistance to Boholst's order to relinquish it.  Furthermore, plaintiff does not contest defendant's evidence that he approached

Boholst in a threatening manner.  At this point, it is important to recall that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 521, 99 S.Ct. 1861, 1865.  In the context of the use of force, "That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Withley v. Albers*, 475 U.S. 312, 321-22 (1986).  On the facts in the record, the court finds that defendant Boholst, while not confronted with "riotous inmates," nevertheless was justified in taking some action to enforce his orders.  While plaintiff alleges that Boholst was "ranting and raving," he does not state any particular words Boholst used.  Even though the push was sufficient to knock plaintiff backwards, there is no evidence of wantonness or of an intent solely to cause harm to plaintiff.  That Boholst may have been on the verge of losing control (as evidenced by the "ranting and raving"), he did no more than push plaintiff and spin him around.  This shows that he tempered his response.  Boholst has submitted evidence that plaintiff was not injured.  There is no genuine dispute about whether Boholst used force sadistically and maliciously for the very purpose of causing harm.  Thus, defendant's motion on this ground must be granted.

### B. Qualified Immunity

Defendant contends that he is entitled to qualified immunity because there is no evidence that he violated plaintiff's constitutional rights.  Def.'s Mot. for Summ. J., at 7:2-3.  Otherwise stated, since plaintiff has not satisfied his burden on summary judgment, defendant is entitled to qualified immunity.  However, because the court resolves the summary judgment motion relating to the merits in favor of defendants, there is no reason to enquire further into an asserted defense of qualified immunity.  *See Wilkie v. Robbins*, 127 S.Ct. 2588, 2608 (2007).

////

**VI.  Conclusion**

For the reasons explained above, the court finds that plaintiff has not satisfied his burden of demonstrating that summary judgment proceedings should be continued in order for him to conduct discovery.  The court further finds that plaintiff never stated any claim that defendant Boholst violated his right to due process, retaliated against him or was involved in any conspiracy to violate plaintiff's rights.  Finally, the court finds that there is no genuine issue for trial about whether defendant used excessive force against plaintiff.

Accordingly, it hereby is ORDERED that:

1. Plaintiff's December 28, 2007, motion to stay these proceedings pursuant to Rule 56(f) hereby is denied; and

2.  Defendant's January 10, 2008, request for judicial notice is denied.

Further, it is RECOMMENDED that defendant's December 14, 2007, motion for summary judgment be granted, that judgment be entered in his favor and the Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 15 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 25, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE